UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHANIE ROBINSON,
*On Behalf of T.R.*

                  Plaintiff,

                  v.

DISTRICT OF COLUMBIA,

                  Defendant.

Civil Action No. 13-1006 (BAH)(AK)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, Stephanie Robinson, seeks $28,422.50 in attorneys' fees as the prevailing party in an administrative due process hearing against the defendant, the District of Columbia, arising from her claim under the Individuals with Disabilities Education Improvement Act ("IDEA"[1]), 20 U.S.C. § 1400 *et seq*. Pl.'s Objs. to Mag. J.'s Prop. Findings & Recommendations ("Pl.'s Objs.") at 2, ECF No. 18. Pending before the Court are the plaintiff's objections to the Magistrate Judge's Report and Recommendation ("R&R"), ECF No. 17, regarding the parties' cross-motions for summary judgment, ECF Nos. 8 and 10. For the reasons outlined below, all but one of the plaintiff's objections are sustained, the plaintiff's motion for summary judgment is granted in part and denied in part, and the defendant's cross-motion for summary judgment is granted in part and denied in part.

---

[1] The Individuals with Disabilities Education Improvement Act ("IDEIA") was enacted in 2004 to reauthorize and the IDEA, s*ee* Pub. L. No. 108-446, 118 Stat. 2647 (2004) (effective July 1, 2005), but the short title continues to state that the law may be cited as the "Individuals with Disabilities Education Act," 20 U.S.C. § 1400(a), which is the reference used in this opinion.

1

I.  **BACKGROUND**

The plaintiff is "the aunt and legal guardian of T.R., a fifteen-year old student," who is eligible for special education services. *See* R&R at 2. The plaintiff successfully brought an administrative Due Process Complaint against the defendant under the IDEA, alleging, *inter alia*, that the defendant had denied T.R. a "free and appropriate public education" ("FAPE"), and also seeking to overturn a manifestation determination[2] unfavorable to the student. *See id.* Before the hearing officer ("HO") could rule on the manifestation determination, but after a pre-hearing order had been issued, the defendant "reversed its decision as to the Manifestation Determination, and thus filed a Partial Motion to Dismiss that issue, on the grounds of mootness." *Id.* The HO granted the defendant's partial motion to dismiss, ordered the defendant to provide relief to the plaintiff based on the defendant's reversal of its previous manifestation determination decision, and preserved the remainder of the issues between the parties for a hearing. *Id.*

After a Due Process hearing, the HO ordered additional relief for the plaintiff based on findings that the defendant had denied T.R. "a FAPE when it failed to provide the Student with special education in conformity with her IEP during the 2012-2013 school year by not providing the specialized instruction required" and when it unilaterally "changed the Student's educational placement to a less restrictive environment." Pl.'s Mot. Summ. J. ("Pl.'s Mot.") Ex. 1 (Hr'g Officer Determination ("HOD")) at 3, ECF No. 8-2. The plaintiff was awarded 150 hours of compensatory education and prospective placement at a private, specialized day school in Virginia. *Id.* at 18.

---

[2] A manifestation determination is an evaluation of a student's alleged behavioral issues to determine whether the problematic behavior is a manifestation of the student's identified disability. *See* 20 U.S.C. § 1415(k)(1)(E).

The plaintiff filed the instant suit in July 2013, seeking attorneys' fees and costs as provided under 20 U.S.C. § 1415(i)(3)(B). *See* Compl. at 16–17, ECF No. 1. The matter was referred to a Magistrate Judge for a report and recommendation. *See* Order at 1, July 3, 2013, ECF No. 3. The R&R, filed on March 14, 2014, made the following findings: (1) the plaintiff was a "prevailing party" for the purposes of the IDEA, R&R at 6; (2) the plaintiff's requested rate for fees, which mirrors the *Laffey* matrix for an attorney and paralegal with the professional experience of plaintiff's counsel and paralegal, should be reduced by twenty-five percent, *see id.* at 10; and that most, but not all, of the hours expended by the plaintiff's counsel were reasonable, *see id.* at 10–19.

The plaintiff timely objected to three portions of the R&R: (1) "the recommendation that Attorney Hecht and Paralegal Chithalina Khanchalern both be paid an hourly rate equal to 75% of those set out in the *Laffey* Matrix[,]" Pl.'s Objs. at 1; (2) "a 50% reduction in the hours spent by the paralegal and the attorney in preparing and reviewing" certain administrative hearing disclosures, *id.*; and (3) the recommended reduction in paralegal time by "3.3 hours" for 'clerical tasks' that the Plaintiff had *already* voluntarily withdrawn[,]" *id.* (emphasis in original). The defendant filed no objections. Consequently, the Court adopts the R&R in full except for those portions pertaining to the objections made by the plaintiff.

## II. LEGAL STANDARD

Motions for attorneys' fees may be referred to a Magistrate Judge for a report and recommendation and any objections thereto are subject to *de novo* review by the District Court. FED. R. CIV. P. 54(d)(2)(D) (stating that a court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter"); *see also David v. District of Columbia,* 252 F.R.D. 56, 58 (D.D.C. 2008) (noting "the limited jurisdiction granted

3

by Congress to a magistrate judge in Federal Rules 54(d)(2)(D) and 72(b) to issue a recommendation on a motion for attorneys' fees"). Federal Rule of Civil Procedure 72(b) sets out the applicable standard of review, providing that "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to[,]" and "may accept, reject, or modify the recommended disposition." FED. R. CIV. P. 72(b)(3); *see also* LCvR 72.3(c) ("A district judge shall make a *de novo* determination of those portions of a magistrate judge's findings and recommendations to which objection is made").[3]

The IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees . . . (I) to a prevailing party who is the parent of a child with a disability." 20 U.S.C. §1415(i)(3)(B)(i). Courts follow a two-pronged inquiry to determine attorneys' fees under the IDEA by, first, determining if the party seeking fees is a "prevailing party" and then determining what fees are "reasonable." *See id.*; *see also Alegria v. District of Columbia*, 391 F.3d 262, 269 (D.C. Cir. 2004) (affirming denial of attorneys' fees where litigant failed to prove threshold requirement that litigant be prevailing party under IDEA); *Wheeler ex rel. Wheeler v. Towanda Area Sch. Dist.*, 950 F.2d 128, 131 (3d Cir. 1991) (noting that determining whether party is "prevailing party" is first step in evaluating entitlement to attorneys' fees under IDEA); *B.R. ex rel. Rempson v. District of Columbia*, 802 F. Supp. 2d 153, 162–63 (D.D.C. 2011).

With respect to the first prong, the Supreme Court has "long held that the term 'prevailing party' in fee statutes is a 'term of art' that refers to the prevailing litigant," reflecting "the fact that statutes that award attorney's fees to a prevailing party are exceptions to the 'American Rule' that each litigant bear [his] own attorney's fees." *Astrue v. Ratliff*, 560 U.S.

---

[3] Although the defendant properly notes that a District Court's review of an R&R is *de novo*, *see* Def.'s Opp'n at 3 ("When resolving objections, the district judge must determine de novo issues that have been properly objected to.") (citing FED R. CIV. P. 72(b)(3)), the defendant strays from the correct review standard to state, as the summary of its primary argument, that "Magistrate Judge Kay's determination . . . is not clearly erroneous or contrary to law," *see id.* The defendant's reference to and application of an incorrect review standard is inexplicable.

586, 130 S. Ct. 2521, 2525 (2010) (internal quotations and citations omitted; brackets in original). The Court has made clear that just because a party has "achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," does not trigger "prevailing party" status. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 600 (2001) ("*Buckhannon*"). Rather, the "'touchstone of the prevailing party inquiry'" is "'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'" *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)). In determining whether a party is the "prevailing party," the D.C. Circuit has interpreted *Buckhannon* as requiring a three part test: "(1) there must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *Green Aviation Mgmt. Co., LLC v. FAA*, 676 F.3d 200, 203 (D.C. Cir. 2012) (quoting *Turner v. Nat'l Transp. Safety Bd.*, 608 F.3d 12, 15 (D.C. Cir. 2010) and *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010)); *see also District of Columbia v. Ijeabuonwu*, 642 F.3d 1191, 1193–94 (D.C. Cir. 2011). This "prevailing party" test applies generally to federal attorneys' fee-shifting statutes, including the IDEA. *See Straus,* 590 F.3d at 901 (applying three-part test to IDEA case).

Determining the reasonable attorneys' fees to which a prevailing party is entitled entails a three-part analysis: "(1) determination of the number of hours reasonably expanded [sic] in litigation; (2) determination of a reasonable hourly rate or 'lodestar;' and (3) the use of multipliers as merited." *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) ("*SOCM*") (citation omitted). The fee applicant bears the burden of justifying

5

the attorneys' fees requested. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) ("A fee applicant bears the burden of establishing an entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates.") (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Thus, in IDEA attorneys' fees cases, the party seeking fees must show she is a prevailing party entitled to an award, and the *SOCM* test to show the reasonableness of the number of hours expended and the hourly billing rate. *See Thomas v. Nat'l Science Found.*, 330 F.3d 486, 492 (D.C. Cir. 2003); *In re North (Bush Fee Application)*, 59 F.3d 184, 189 (D.C. Cir. 1995) ("[T]he fee petitioner bears the burden of establishing all elements of his entitlement.").

To meet the latter burden, the plaintiff must submit evidence regarding "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107. Upon submission of such information, a presumption applies that the number of hours billed and the hourly rates are reasonable. *See Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 100–01 (D.D.C. 2010) (citing *Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 172 (D.D.C. 2010)). The burden then shifts to the defendant "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Covington*, 57 F. 3d at 1109–10 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982) ("*Concerned Veterans*")); *see also Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 59–60 (D.D.C. 2011); *Jackson*, 696 F. Supp. 2d at 100–101.

## III. DISCUSSION

Since the R&R recommends finding that the plaintiff is a prevailing party within the meaning of 20 U.S.C. § 1415(i)(3)(B)(i), *see* R&R at 6, and no objection is interposed to that

6

finding, the Court adopts the R&R recommendation on this issue and finds that the plaintiff is a prevailing party who may recover attorneys' fees. The plaintiff's objections fall into two general categories: the appropriate rate for her attorneys' fees and specific disputes over a small amount of invoiced time. Each category of objection is analyzed below.

### A. The Rate Reduction

Under the three-part *SOCM* test for determining a reasonable fee, which includes determination of the number of hours and use of any multipliers, the parties do not dispute the number of hours reasonably expended in this litigation, except the relatively small number of hours discussed in Parts III.B, *infra*, and no multiplier may be requested or awarded under the IDEA. 20 U.S.C. 1415(i)(3)(C) ("No bonus or multiplier may be used in calculating the fees awarded under this subsection."). Thus, the only part of the *SOCM* test at issue in this matter is the determination of the reasonable hourly rate. To establish a reasonable hourly rate, the plaintiff must show "at least three elements:" "[1] the attorneys' billing practices; [2] the attorneys' skill, experience, and reputation; and [3] the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107. Once the plaintiff has provided "such information, a plaintiff establishes a presumption that the number of hours billed and the hourly rate are reasonable, and the burden shifts to the defendant to rebut the plaintiff's showing of reasonable hours and reasonable hourly rates for attorneys of the relevant level of skill and experience." *Rooths*, 802 F. Supp. 2d. 56, 60 (D.D.C. 2011).

As to the first element, the attorney's billing practices, the defendant does not challenge the plaintiff's counsel's verified statement that the counsel's firm "currently matches its hourly rates to those in what is known as the USAO adjusted *Laffey* matrix." Pl.'s Mot. Ex. 3 ("Verified Statement of Att'y Alana Hecht, Aug. 21, 2013") ¶ 9, ECF No. 8-4; *see generally* Def.'s Reply

7

Pl.'s Objs. ("Def.'s Opp'n"), ECF No. 20. Indeed, the defendant ignores this factor entirely. *See generally* Def.'s Opp'n. Similarly, the defendant does not explicitly challenge the plaintiff's counsel's "skill, experience, and reputation," *Covington*, 57 F.3d at 1107, except to raise questions about the meticulousness of the plaintiff's counsel's bookkeeping practices and the dual role of the plaintiff's paralegal, which are entirely irrelevant here.[4] Instead, the defendant argues that the plaintiff's verified statement "standing alone, does not meet the requirement that a fee applicant 'produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar lawyers of reasonably comparable skill, experience, and reputation[.]'" Def.'s Opp'n at 6 (citing R&R at 6). Thus, the only dispute to be resolved is whether the plaintiff has put forth sufficient evidence of "the prevailing market rates in the relevant community[.]" *Covington*, 57 F.3d at 1107.

The defendant is correct that "[t]he IDEA is controlling on the matter of rate." Def.'s Opp'n at 6. This law provides that "[f]ees awarded . . . shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). The D.C. Circuit has made it clear that the *Laffey* matrix,

---

[4] The defendant spends the first three pages of its opposition to the plaintiff's objections attempting to disparage the honesty and professionalism of the plaintiff's counsel by accusing her of "engag[ing] in a number of problematic, if not outright dishonest billing practices." *See* Def.'s Opp'n at 1–3. As support for this hyperbolic accusation, the defendant makes much of a single typographical error that, when pointed out by the defendant, the plaintiff conceded and withdrew the entry from her requested fee. *See id.* at 2. The defendant opines that this concession caused the Magistrate Judge "unease," s*ee id.,* a surprising notion given the plaintiff's counsel's appropriate and professional admission of error and withdrawal of the requested fee. The defendant also rehashes an argument made before the Magistrate Judge regarding the role of the plaintiff's paralegal as an educational advocate. *See id.*; Def.'s Mem. Supp. Cross-Mot. Summ. J. ("Def.'s Mem.") at 18, ECF No. 10-1 ("Plaintiff has thinly guised the services of Chithalina Khanchalern as a 'paralegal,' not an advocate, thereby repeatedly billing for her services."). The R&R rejected this argument and found that the plaintiff's paralegal was, in fact, appropriately acting as a paralegal, regardless of what other roles she may have in the plaintiff's counsel's law firm. *See* R&R at 11–13. To be sure, the R&R questions whether the plaintiff's counsel's "representations regarding [the paralegal] can be fully accurate," but nevertheless, after scrutinizing the billing records provided by the plaintiff's counsel, found that all but 9.8 hours of the paralegal's work were properly compensable. R&R at 13. The defendant did not object to the R&R's recommendation on this issue, but raises this argument apparently only to bolster the defendant's *ad hominem* attacks on opposing counsel's skills. *See, e.g.*, Def.'s Opp'n at 10 n. 9 ("Coincidentally, Plaintiff claims experience as the reason why she should receive the *Laffey* rate, while continually revealing her attorney's inexperience throughout her brief."). Such irrelevant and inappropriate efforts to disparage opposing counsel detract from consideration of the legal arguments at issue and reflect more on the author than the target of the criticism.

which is maintained and updated by the United States Attorney's Office for the District of Columbia as a reasonable approximation of the rates charged by attorneys in the District of Columbia for complex federal litigation, is a "useful starting point" for proving the prevailing market rate for services. *See Covington*, 57 F.3d at 1109. The *Laffey* matrix has been used repeatedly by judges in this District as an appropriate measure of the prevailing rate in the community for IDEA cases, holding that such rates are presumptively reasonable. *See Thomas v. District of Columbia*, 908 F. Supp. 2d 233, 243 & n.6 (D.D.C. 2012) (collecting cases). Thus, by pointing to the *Laffey* matrix as her proof of prevailing community rates, the plaintiff has provided the appropriate starting point for the "case by case analysis" that must be made when evaluating a fee petition under the IDEA. *See A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 48 (D.D.C. 2012).

Since the plaintiff has met each of the *SOCM* test's three parts, the burden shifts to the defendant "to go forward with evidence that the rate is erroneous." *Covington*, 57 F.3d at 1109 (quoting *Concerned Veterans*, 675 F.2d at 1326); *see Rooths*, 802 F. Supp. 2d at 60 ("[t]he burden shifts to the defendant to rebut the plaintiff's showing of . . . reasonable hourly rates."). In its cross-motion for summary judgment, however, the defendant attempts to place the burden on the plaintiff to justify the presumptively reasonable rates. *See* Def.'s Mem. Supp. Cross-Mot. Summ. J., ("Def.'s Mem.") at 6, ECF No. 10-1. Specifically, the defendant erroneously argues that "[i]t is Plaintiff's burden to demonstrate that this due process hearing was sufficiently complex to merit the *Laffey* rate." *Id.* This position is simply incorrect as a matter of law. In *Covington*, the D.C. Circuit made clear that the burden is not on the plaintiff but on the *defendant*, once the three parts of the *SOCM* test are met, to come forward with specific evidence

as to why the presumptively reasonable rate should not apply. *See Covington*, 57 F.3d at 1109. In applying this standard, the defendant's "evidence" is woefully inadequate.

The defendant essentially makes one argument as to why the *Laffey* matrix rates should not apply in this matter: that the instant case "was not a complex matter" deserving of full *Laffey* rates. Def.'s Mem. at 7. While complexity is one of the factors that may be considered as part of the reasonableness of an attorney's overall fee, *see Thomas*, 908 F. Supp. 2d at 246–47, it is not, in and of itself, sufficient to overcome the presumption that the claimed *Laffey* rates are reasonable. Indeed, Supreme Court precedent is clear that "the novelty and complexity of a case . . . 'presumably [is] fully reflected in the number of billable hours recorded by counsel.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (quoting *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 565 (1986) (second alteration in original)).[5]

The *Perdue* court went on to note that "when a trial judge awards an enhancement on an impressionistic basis, a major purpose of the lodestar method—providing an objective and reviewable basis for fees—is undermined." *Id.* at 558 (internal citations omitted). The same logic holds true for reductions, since reductions "on an impressionistic basis," *id.*, similarly undermine the "objective and reviewable basis for fees," *id.*, that commends the lodestar method.

---

[5] Even if complexity were, standing alone, sufficient to alter the presumptively reasonable *Laffey* rates, the Court finds that the instant matter is sufficiently "complex." The case involved an eight-hour administrative hearing, hundreds of pages of disclosures, the introduction of thirty-one exhibits, the calling of six witnesses (and the notice of five additional witnesses), familiarity with various psychiatric diagnoses, and knowledge of the often byzantine intricacies of the IDEA litigation process. *See* R&R at 9. Even those IDEA cases where the merits are never litigated in federal court require an attorney who "understand[s] the bureaucratic workings of [the IDEA] system, know[s] competent and caring individuals in that system who can break logjams and obtain necessary evaluations, reports, and materials, and then assure provision of whatever FAPE is deemed appropriate." *Cox v. District of Columbia*, 754 F. Supp. 2d 66, 76 (D.D.C. 2010). Such an attorney must possess qualities of "diligence, perseverance, persuasiveness, and negotiating and inter-personal skills—as well as the traditional legal skills expected of any competent lawyer." *Id.* Thus, as this Court has written previously, "the *Laffey* matrix is presumptively reasonable in civil rights litigation—and the enforcement of rights under the IDEA qualifies as civil rights litigation—and . . . a complexity determination is not the dispositive question as to whether such rates apply." *Eley v. District of Columbia*, No. 11-309, 2013 WL 6092502, at *14 (D.D.C. Nov. 20, 2013). In any event, even were this case not "complex," the complexity or lack thereof in a given case is adequately accounted for by the number of hours expended, not a reduction in rate. *See Perdue*, 559 U.S. at 553.

10

The defendant's argument appears to be that at some point, perhaps after a certain number of witnesses are called or a certain number of exhibits are introduced, the presumptively reasonable *Laffey* rates are warranted, but not until that indistinct and ephemeral point is reached. *See* Def.'s Opp'n at 9. It is exactly this kind of subjective, unfettered discretion that the Supreme Court opposed in *Perdue*, and it cannot, standing alone, be the reason for reducing fees in this case.

Aside from subjective discussions of what constitutes a "complex" case, the only justification the defendant offers as to why a twenty-five percent reduction from the *Laffey* rates is appropriate is that "the instant case involves fees from a case litigated solely at the administrative level." Def.'s Opp'n at 7. In the defendant's view, administrative proceedings under the IDEA are inherently less complex and, consequently, less deserving of the presumptively reasonable full *Laffey* rates. *See id.* The defendant points out that the posture of the instant case, in which the litigation occurred at the administrative level, differentiates it from two previous opinions of this Court where *Laffey* rates were awarded, *Eley v. District of Columbia*, No. 11-309, 2013 WL 6092502 (D.D.C. Nov. 20, 2013), and *Thomas v. District of Columbia*, No. 10-913, 908 F. Supp. 2d 233 (D.D.C. 2012), both of which involved extensive substantive motions practice in the District Court. *See* Def.'s Opp'n at 6–7. There is no statutory basis for the distinction the defendant attempts to draw in what constitutes a reasonable hourly rate depending on whether the party prevailed in administrative proceedings or federal court, or both.

This argument reflects the District of Columbia's latest attempt to limit its liability for attorneys' fees in IDEA litigation when it has been found—repeatedly—to be acting in a manner that violates the civil rights of some of the District's most vulnerable citizens: children with

11

special needs. For instance, over thirty years ago, the District of Columbia argued that plaintiffs, who were successful on the administrative level, were not entitled to recover *any* attorneys' fees under the virtually identical language of IDEA's predecessor statute. *See Moore v. District of Columbia*, 907 F.2d 165, 167 (D.C. Cir. 1990).[6] An *en banc* D.C. Circuit flatly rejected the District's argument because, as the defendant rightfully points out in this case, the "IDEA is controlling on the matter of rate." Def.'s Opp'n at 6; *Moore*, 907 F.2d at 167 ("We begin, as we must, with an examination of the statutory text."). The relevant statutory text reads "[i]n *any action or proceeding* brought under this section, the court, in its discretion, may award reasonable attorneys' fees . . . ." 20 U.S.C. § 1415(i)(3)(B)(i) (emphasis added). The D.C. Circuit held that Congress intended this broad language to encompass administrative proceedings and civil actions, since the Court was "at a loss to give meaning to the distinction between 'action' and 'proceeding' short of inferring that Congress meant to authorize fees for parents who prevail either in a *civil action* or in an *administrative proceeding* under [the IDEA.]" *Moore*, 907 F.2d at 167 (emphasis in original).

Just as the IDEA explicitly authorizes fee awards for parties who prevail in administrative actions alone, *see id.*, it makes no distinction between a reasonable rate for fees on the administrative level, as opposed to the District Court, *see* 20 U.S.C. § 1415(i)(3)(B)(i). Were this Congress' intent, Congress has demonstrated that it knows exactly how to make such distinctions. For example, in the Social Security context, Congress limits the amount of attorneys' fees available when a litigant is successful in an administrative proceeding before the

---

[6] The District has also argued before this Court, unsuccessfully, that successful litigants in IDEA cases should not be entitled to fees incurred in subsequent litigation over appropriate fees—so-called "Fees for Fees"—despite such fees for fees being allowed in myriad other civil rights fee-shifting statutes. *See Eley*, No. 11-309, 2013 WL 6092502, at *16 (D.D.C. Nov. 20, 2013). As this Court has noted previously, the resources the District of Columbia continues to expend on fighting IDEA litigation "may be better spent if re-focused on meeting the requirements of the IDEA in the first instance." *Id.* at *19.

12

Social Security Commissioner, *see* 42 U.S.C. § 406(a)(2)(A) (setting cap for recovering fees in administrative proceedings at no more than $4,000), by contrast to when the litigation continues in District Court, *see id.* § 406(b) (setting cap for recovering fees at "25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment"). The fact that Congress explicitly intended the attorneys' fees provision in the IDEA to cover both administrative and civil actions *and* that Congress declined to mandate a lower fee for administrative actions, as it has done in other contexts, is a strong statutory refutation of the defendant's position that a party who prevails at the administrative level without having to seek District Court intervention, should be entitled to attorneys' fees at a lower rate. Indeed, such a position would be enormously short-sighted and provide a perverse incentive for attorneys to fail—and fail quickly—before administrative tribunals in order to initiate federal court proceedings for which the attorney would be entitled attorneys' fees at a full, regular and reasonable rate.

To bolster its argument that attorneys' fees for administrative proceedings should be awarded at a lower rate than for District Court actions, the defendant relies on a footnote in one of this Court's opinions, *see* Def.'s Opp'n at 7 (quoting *Eley*, 2013 WL 6092502, at *14 n.12), but that reliance is misplaced and the quotation is taken out of context. The *dicta* in question states that "[w]here the merits of an IDEA case have been resolved administratively and the litigation in federal court is limited to a dispute over attorneys' fees, courts have regarded the USAO matrix rates as inapplicable." *Eley*, 2013 WL 6092502, at *14 n.12. Far from standing for the proposition that the *Laffey* matrix is categorically inapplicable to administrative proceedings, this footnote merely acknowledges that some courts have ruled that the *Laffey* matrix did not apply to some routine administrative proceedings, without opining or holding that

13

such a ruling was appropriate, since *Eley* did not involve administrative proceedings only. *See id.* To the contrary, this Court noted in *Eley* that "a complexity determination is not the dispositive question as to whether" *Laffey* rates should apply, but even if it were, "IDEA cases, as a subset of civil rights litigation . . . qualify as 'complex' federal litigation." *Id.*

Finally, the defendant makes an implicit argument, through citing twenty-nine cases from the past three years where a rate lower than that reflected in the *Laffey* matrix was applied, that seventy-five percent of *Laffey* matrix rates *is* the market rate for IDEA litigation. *See* Def.'s Opp'n at 4–6. These cases rely heavily, if not entirely, on the complexity factor the Court has previously rejected and, in many instances, required the plaintiff to justify the presumptively reasonable *Laffey* rates, rather than requiring the defendant to disprove those rates. *See*, *e.g.*, *Wallace v. District of Columbia*, 2012 U.S. Dist. LEXIS 67919, No. 11-175 (D.D.C. May 16, 2012); *Jones v. District of Columbia*, 2012 U.S. Dist. LEXIS 65941, No. 11-168 (D.D.C. May 11, 2012); *Young v. District of Columbia*, 869 F. Supp. 2d 1 (D.D.C. 2012); *Scott v. District of Columbia*, 2012 U.S. Dist. LEXIS 65372, No. 11-165 (D.D.C. May 9, 2012); *Huntley v. District of Columbia*, 859 F. Supp. 2d 25 (D.D.C. 2012); *Huntley v. District of Columbia*, 2012 U.S. Dist. LEXIS 63335, No. 11-164 (D.D.C. May 7, 2012); *Flores v. District of Columbia*, 858 F. Supp. 2d 95 (D.D.C. 2012); *Huntley v. District of Columbia*, 2012 U.S. Dist. LEXIS 61870, No. 11-157 (D.D.C. May 3, 2012); *Petway v. District of Columbia*, 858 F. Supp. 2d 70 (D.D.C. 2012); *Young v. District of Columbia*, 869 F. Supp. 2d 1 (D.D.C. 2012); *Crawford v. District of Columbia*, 2012 U.S. Dist. LEXIS 54653, No. 11-174 (D.D.C. Apr. 18, 2012); *Cousins v. District of Columbia*, 2012 U.S. Dist. LEXIS 2705, No. 11-172 (D.D.C. Jan. 10, 2012); *Gorman v. District of Columbia*, 2011 U.S. Dist. LEXIS 127631, No. 11-150 (D.D.C. Nov. 4, 2011). Thus, the Court does not find the defendant's citations persuasive.

Moreover, as one of the very cases on which the defendant relies points out, "unless a party is prepared to support its argument with 'statistical, economic, or other evidence to include, perhaps, expert testimony,' there is no way to determine what rate reflects the actual market rate[.]" *Moss v. District of Columbia*, No. 11-994, 2012 U.S. Dist. LEXIS 109987, at *7–8 (D.D.C. July 12, 2012) (quoting *Johnson v. District of Columbia*, 850 F. Supp. 2d 74, 79 (D.D.C. 2012)). While the *Laffey* matrix has been accepted as the "starting point" for civil rights litigation rates in this district for more than twenty-five years, *see SOCM*, 857 F.3d at 1525, the defendant has offered *no* "statistical, economic, or other evidence," *Moss*, 2012 U.S. Dist. LEXIS 109987, at *7, that seventy-five percent of *Laffey* rates is the *market rate* for civil rights litigators in this District. It is the defendant's burden, not the plaintiff's, to challenge the established baseline that is the *Laffey* matrix, *see Covington*, 57 F.3d at 1109, and the defendant's cherry-picking of cases favorable to its view is an inadequate substitute for the sound methodology on which the various versions of the *Laffey* matrix rest.[7] *See Johnson*, 850 F. Supp. 2d at 79 (noting, in IDEA case, where defendant District of Columbia failed "to prove by statistical, economic, or other evidence to include, perhaps, expert testimony, that $300 per hour strikes a fair balance between the burden on the public fisc and the need to attract competent

---

[7] The defendant argues that the plaintiff "has made no attempt to show that the *Laffey* rates charged in this case were necessary to attract competent counsel." Def.'s Mem. at 7. While it is true that the touchstone of awarding attorneys' fees in civil rights litigation is to attract competent counsel without providing a windfall, the D.C. Circuit has held explicitly that it "is a fee award based on prevailing market rates . . . [that] accomplishes Congress' express goals." *See SOCM*, 857 F.2d at 1521. Competent counsel are expected to be attracted by market rates and the *SOCM* three part test, which the plaintiff has met here, establishes that market rate. Similarly, the mere fact that attorneys practicing special education law in this District may at times be forced to accept seventy-five percent of *Laffey* rates instead of their actual market value does not change that market value. *But see McAllister v. District of Columbia*, No. 11-2173, 2014 U.S. Dist. LEXIS 87674 (D.D.C. June 27, 2014) (holding that because counsel was competent and had accepted seventy-five percent of *Laffey* rates in the past, the reduced *Laffey* rates were adequate to attract competent counsel). If anything, consistently applying seventy-five percent of the *Laffey* matrix rates may force competent counsel *out of* this kind of civil rights litigation, an eventuality that, combined with the defendant's repeated dilatory tactics in payment of court ordered attorneys' fees, appears close to becoming a reality. *See Thomas*, 908 F. Supp. 2d at 245–46 (D.D.C. 2012) (describing District of Columbia's failure to pay attorneys' fees on time or in full, resulting in experienced special education law firms being forced to scale back or cease operation).

counsel and that anything more is not a reflection of the actual market, these cases will become a meaningless exercise between plaintiffs, who will cite those cases that support use of the *Laffey* rate and the defendant, who will cite those that do not.").

In sum, since the lodestar approach embodied by the *SOCM* test "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," *Delaware Valley*, 478 U.S. at 566, and "novelty and complexity of a case generally may not be used as a ground for" altering the lodestar amount since "these factors presumably [are] fully reflected in the number of billable hours recorded by counsel[,]" *Perdue*, 559 U.S. at 553 (internal quotation marks omitted; first alteration in original), the defendant has failed to provide sufficient evidence to overcome the presumptively reasonable *Laffey* rates sought by the plaintiff. Consequently, the plaintiff's objections to the R&R's reduction in rate to seventy-five percent of the *Laffey* matrix rates are sustained, and the Court finds that the full rate requested by the plaintiff for the plaintiff's counsel and paralegal, $290 per hour and $145 per hour, respectively, *see* Pl.'s Objs. at 22, are reasonable and reflect the prevailing community rate for IDEA litigation in this District.

B.  **Specific Time Disputes**

The plaintiff's remaining objections relate to two distinct sets of hours expended that the R&R found unreasonable: (1) the reduction by fifty percent of attorney and paralegal hours spent reviewing disclosures prior to the administrative hearing; and (2) a 3.3 hour reduction in paralegal time pertaining to certain clerical tasks the plaintiff asserts were duplicative of concessions the plaintiff already made. Each set of hours is addressed in turn.

1.  *Time Spent on Disclosures*

The first set of reductions to which the plaintiff objects are a reduction by fifty percent of the 5.6 hours of attorney time and eleven hours of paralegal time spent compiling and preparing disclosures between June 6, 2013 and June 12 2013. *See* Pl.'s Objs. at 14; R&R at 16. The R&R

recommended these hours be halved because "the number of hours billed are unreasonable and the entries themselves duplicative of one another." R&R at 16.

First, two of the entries objected to, for attorney time on June 6, 2013, totaling 1.5 hours of attorney time, appear to refer to activity that was almost entirely clerical in nature. The first entry, for .5 hours, details when the attorney "[n]umbered 5-day per []HO requirement and gave to paralegal to PDF into one large document . . . All exhibits are to be numbered page by page." Pl.'s Objs. at 14. In other words, the attorney spent one half hour "Bates" stamping the pages in her disclosures—a task that requires no legal expertise. The second entry, for one hour, details when the attorney reviewed the disclosure, "ensure[d] it me[t] the requirements of the []HO's Orders . . . and file[d] it in accordance with the requirements." *Id.* Again, this task does not appear to require any particular legal expertise. The R&R's recommendation that the plaintiff's counsel's time for these two entries be cut in half to represent the clerical portion of the work is reasonable. The plaintiff's objection to this reduction is overruled.

Similarly, for the seven hours of paralegal time the R&R recommends reducing by half because of the clerical nature of the tasks, such a deduction appears reasonable and, in fact, somewhat conservative. Close scrutiny of the billing records provided by the plaintiff indicates that five of the seven hours of paralegal time charged by the plaintiff involved such obviously clerical tasks as "[p]ut[ting] separator pages between each exhibit[;]" "removing staples and other impediments to creation of final packet[;]" and converting the documents into a PDF. *See id*. The remaining two hours do appear to be legal work, since the paralegal billed for "look[ing] through the student's file to identify and extract documents for use in 5-day. Attorney instructed paralegal to include pertinent documents such as meeting notes, letter of invitation, IEPs, and evaluations." *Id.* This two-hour charge required evaluation of individual documents and

17

separating useful documents from non-useful documents, which does not equate to mere clerical work. Thus, the R&R's recommendation for a reduction of 3.5 hours, allowing for the potentially legally relevant work the paralegal did in addition to the clerical work over the remaining five hours, appears reasonable. The plaintiff's objection to this reduction is overruled.

The R&R recommends reducing two additional entries pertaining to the plaintiff's disclosures by fifty percent: 4.1 attorney hours for reviewing the disclosures immediately prior to the administrative hearing and four hours of paralegal time for the paralegal's review. R&R at 16–17. The two entries are not duplicative, since the paralegal attended the administrative hearing on June 13, 2013 and assisted the plaintiff's attorney at the hearing. *See* R&R at 15. The R&R does not explain why spending four hours reviewing and annotating over four hundred pages of documents to be referred to at an administrative hearing immediately prior to a hearing and a full week after they were compiled is unreasonable, aside from conclusorily stating that the "number of hours billed are unreasonable." R&R at 16. Since the hours expended are presumptively reasonable if appropriately recorded with sufficient detail, *see Covington*, 57 F.3d at 1109—and there is no dispute that these billing records were sufficiently detailed—the burden should have shifted to the defendant to come forward with evidence indicating that the time expended on such a task was clearly unreasonable. *See id.* The defendant's argument as to why these hours were excessive consisted of a cursory comparison to an unrelated case, without any analysis of the similarities or differences between the two cases, and a conclusory statement that "Plaintiffs spent nearly 20 hours on the disclosures in this case, which basically consisted of photocopied school documents. This is excessive." Def.'s Mem. at 15. Such conclusory and unsupported analysis is unpersuasive and falls far short of the level of proof required to

18

overcome the presumption of reasonableness. The plaintiff's objections to the fifty percent reduction in attorney and paralegal time for the June 11 and June 12, 2013 entries are sustained.

In summary, the plaintiff's objections are sustained as to the reduction in time for reviewing the disclosures immediately prior to the administrative hearing. The plaintiff's objections to the fifty percent reduction in attorney and paralegal time in preparing the disclosures are overruled, since it appears that most of that time was taken up by non-compensable clerical tasks.

### 2. *Paralegal Time Deduction*

The plaintiff's remaining objection is to the deduction of 3.3 hours of paralegal time that the plaintiff asserts was double counted by the R&R. Pl.'s Objs. at 19–20. The plaintiff appears to be correct, and the defendant does not dispute that the entries should only be deducted once. *See* Def.'s Opp'n at 14. The 3.3 hours of paralegal time at issue occurred over three days, on March 7, 2013; June 6, 2013; and June 11, 2013. *See* R&R at 17–18. The plaintiff had voluntarily withdrawn those entries prior to the R&R's issuance. *See* Pl.'s Reply Re: Def.'s Opp'n & Cross-Mot. ("Pl.'s Mot. Reply") at 19–20, ECF No. 12-1 (conceding charges for clerical work on March 7, 2013; June 6, 2013; and June 11; 2013 that are identical to the amount of time spent by the paralegal disallowed in the R&R).

The R&R's final calculation of fees due to the plaintiff was based on "the original request minus the fees the Plaintiff withdrew in the Reply." R&R at 3 n.3. Thus, by disallowing charges that were already removed from the invoice amount, and then deducting those charges from the adjusted fee request, as modified by the plaintiff's reply, the R&R would deduct these charges twice. The parties agree the deductions should not occur twice and, consequently, the plaintiff's objections as to the 3.3 hours of paralegal time referred to in the R&R at pages seventeen and eighteen are sustained.

## IV. CONCLUSION

The Court adopts the Report and Recommendation of the Magistrate Judge in part and sustains the objections of the plaintiff in part. The plaintiff's objection to reducing the plaintiff's counsel's and paralegal's fee rates to seventy-five percent of the requested *Laffey* rate is sustained. The plaintiff's objection to a reduction of 3.3 hours of paralegal time as having been already deducted from the invoice under consideration is sustained. The plaintiff's objection to a fifty percent reduction in the 4.1 hours of attorney time and four hours of paralegal time expended on reviewing disclosures prior to the administrative hearing is sustained. The plaintiff's objection to the fifty percent reduction in the attorney's and paralegal's time spent preparing the disclosures on June 6, 2013 is overruled.

Based on these findings, the plaintiff's Motion for Summary Judgment is GRANTED in part and DENIED in part; the defendant's Cross-Motion for Summary Judgment is GRANTED in part and DENIED in part. The plaintiff has appropriately justified 68.75 hours of attorney time at the full *Laffey* matrix rate of $290 per hour for an attorney of the plaintiff's counsel's experience and 51.5 hours of paralegal time at the full *Laffey* matrix rate of $145 per hour. The defendant shall pay the plaintiff $27,405.00 in reasonable attorneys' fees by August 31, 2014.

An appropriate Order accompanies this Memorandum Opinion.

Date: July 28, 2014

_____
Beryl A. Howell
United States District Judge